UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY POWELL,

                Petitioner,

                                          CASE NO. 12-cv-11100

v.                                       HONORABLE SEAN F. COX

DAVID BERGH,

                Respondent.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S APPLICATION FOR THE WRIT OF HABEAS CORPUS

Pending before the Court is petitioner Gregory Powell's habeas corpus petition under 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's state convictions for assault with intent to commit murder, discharge of a firearm in a building, and possession of a firearm during the commission of a felony (felony firearm).  The trial court sentenced Petitioner to imprisonment for twelve to twenty years for the assault conviction, a concurrent term of two to four years in prison for the discharge-of-a-firearm conviction, and a consecutive term of two years in prison for the felony firearm conviction.  Petitioner argues in his habeas corpus petition and supporting briefs that: he was entitled to substitution of appellate counsel or a response to his requests for substitution of counsel; the Confrontation Clause was violated by the admission of a witness's out-of-court statement; trial and appellate counsel were ineffective; the prosecution failed to produce four witnesses that it endorsed; and the evidence adduced at trial was insufficient to sustain his convictions.  Respondent David Bergh urges the Court to deny the habeas petition on grounds that Petitioner's claims regarding the

Confrontation Clause, trial counsel, and the *res gestae* witnesses are procedurally

defaulted and that the state courts' rejection of Petitioner's claims were not contrary to

federal law, unreasonable applications of federal law, or unreasonable determinations of

the facts.  Having reviewed the pleadings and record, the Court finds that the evidence

at Petitioner's jury trial was sufficient to support his convictions, but that his right to

counsel of choice was violated during his appeal of right.  Accordingly, the Court will

conditionally grant the petition on the choice-of-counsel claim, but deny the petition on

the sufficiency-of-the-evidence claim.  The Court finds it unnecessary to address

Petitioner's other claims.

## I.  BACKGROUND

### A.  The Trial and Sentence

The charges against Petitioner arose from the shooting of Charles Scott ("Scott")

on January 16, 2006, at a Detroit night club known as Marilyn's on Monroe.  Petitioner

was tried with his co-defendant, Aylaina Verdejo ("Verdejo"), before a jury in Wayne

County Circuit Court where the following witnesses testified.

#### 1.  Prosecution Witnesses

##### a.  Mal Porties

Mal Porties testified that he, Petitioner, and Verdejo were members of a social

club known as the Rough Riders.  Verdejo was President of the car division of the club,

and Petitioner was vice president of the car division.

Continuing, Porties stated that he, Scott, Petitioner, and Verdejo were present at

Marilyn's on Monroe on January 16, 2006.  During a brief conversation that he had with

2

Petitioner, Petitioner informed him that he had a weapon on him.  Petitioner was wearing a Rough Riders' vest, and Porties felt an object in the upper pocket of Petitioner's vest.  He could not determine what the object was, and he left the night club before the shooting.

Porties explained to the jury that the night club had a mandatory coat check and that a security guard usually patted people down and frisked them for weapons.  But, according to Porties, the security guard did not always pat people down or search one's pockets.

### b.  Charles Scott

Scott testified that he arrived at Marilyn's on Monroe about 12:45 a.m. or 1:00 a.m. on January 16, 2006.  He knew both Petitioner and Verdejo through the Rough Riders' bike club, and he saw both of them at Marilyn's on Monroe that night.  He thought that his relationship with both Petitioner and Verdejo was good, but he got into an argument with Verdejo because somebody had informed Verdejo about something Scott had said about her.  The argument lasted about five minutes.  Scott then went to the upper level of the night club to get Bruiser, who was the president of the Rough Riders.  He and Bruiser went back downstairs, and Bruiser told Verdejo to "leave it alone."  Petitioner was standing by Verdejo at the time, and after he and Bruiser had words with each other, Bruiser went back upstairs.  At the time, Petitioner and Verdejo were standing about five feet away from Scott in the corner of the dance floor by the speakers.  Scott heard Verdejo tell Petitioner to shoot him.  Seconds later, Scott was shot in the chest and fell down.  He got back up and was shot again.  He heard five gunshots and saw gunfire in front of Petitioner, who was standing by the speakers.  He

3

did not see anyone else there, and he subsequently saw Petitioner run out the back door of the night club. When the police arrived, he told them that Petitioner had shot him. After he had surgery, he talked to Investigator Jackson and told Jackson that he had argued with Verdejo and that Verdejo told Petitioner to shoot him.

Scott stated on cross examination that he had known Petitioner for about two years, that he thought their relationship was good, and that he knew of no reason why Petitioner would shoot him. Scott denied being armed or intoxicated on the night of the shooting, and he denied arguing with Petitioner, but he admitted that he did not see either Verdejo or Petitioner with a gun that night. As for security measures at Marilyn's on Monroe, Scott testified said that there was no mandatory coat check and that he was not checked every time he went to the night club.

### c. Keeth Williams

Detroit Police Officer Keeth Williams testified that he responded to the crime scene at approximately 4:20 a.m. on January 16, 2006. He talked to Cynthia Jones, who approached him and wanted to talk about what had happened. He then informed other officers at the scene what Ms. Jones had said.

### d. Antwan Fresh

Police officer Antwan Fresh testified that he was Officer Williams' partner on January 16, 2006, and that, after arriving at the night club, he saw the victim lying on the floor in the vestibule. The victim provided a vague description of the suspect and did not say who shot him. But when he asked the victim what happened, the victim informed him that he had a verbal altercation and that the guy shot him.

Officer Fresh stated that he learned the identity of the shooter from Officer

4

Williams, who acquired the shooter's name from a witness.  After refreshing his memory with his report of the incident, Officer Fresh testified that the alleged shooter was Gregory Powell.

### e.  Michael Jackson

Investigator Michael Jackson of the Detroit Police Department testified that he and another investigator took witness statements from people inside the night club.  On the following day, he talked to Scott at Detroit Receiving Hospital.  He asked Scott how Verdejo and Petitioner had become involved in the incident.  He also asked Petitioner whether he heard Verdejo tell Petitioner to shoot him.  Petitioner had previously told him about Verdejo and Petitioner, and he answered "Yes" to Jackson's question.

### 2.  The Defense Witnesses

### a.  Ricky Hardnett

Mr. Hardnett testified that he knew Scott, Mal Porties, and the defendants.  He claimed that he was present when the shooting occurred and that he could not recall seeing Mal Porties there.  Hardnett also stated that, as he and Petitioner were getting ready to leave the night club, they heard a commotion and saw Verdejo arguing with Scott.  According to Hardnett, Petitioner stepped in between Verdejo and Scott and pushed Verdejo to the back of the bar.  "Rhonda" then came and grabbed Verdejo and tried to calm her down.  At the time, Petitioner was facing away from Scott.  Hardnett was following Petitioner and was between Petitioner and Scott.  They heard gunshots coming from behind them where there was a crowd of people.

Hardnett also stated that he had never seen a Rough Riders vest with a pocket

5

at the top.  He denied seeing Petitioner with a gun that night, and he denied hearing

Verdejo or anybody else say, "Shoot him," but he admitted that he did not see who fired

the gunshots.  On the issue of security at the night club, Hardnett testified that there

was a mandatory coat check and that people got frisked and patted down.

### b. Tiffany Threat

Ms. Threat testified that she was at Marilyn's on Monroe at approximately 4:20

a.m. on January 16, 2006.  She was sitting at the bar waiting for Petitioner to come

downstairs when Verdejo and a man began to argue.  Petitioner came downstairs and

separated the two people who were arguing.  Another girl came along and pulled

Verdejo away.  Petitioner was walking towards her (Threat) and had his back to the

victim when they heard gunshots.  There were about twenty-five people downstairs, and

the majority of them ran out the back door after the shooting.

According to Ms. Threat, Petitioner was wearing a white or cream-colored shirt or

jogging top and jeans on the night of the shooting.  She did not see Petitioner point or

shoot a gun that night.  Nor did she hear anyone tell Petitioner or anybody else to shoot.

### c. Rhonda Navero

Rhonda Navero testified that she had an intimate relationship with Mal Porties

long ago and that Porties was not present at Marilyn's on Monroe on the night of the

shooting.  Navero claimed that there was a mandatory coat check at the night club, that

Petitioner was not wearing a vest that night, and that Rough Riders' vests did not have

a pocket at the top where one could put a weapon.  She thought that Petitioner was

wearing jeans and a white tee shirt that night.  She observed an argument between

Verdejo and "Chuck," which escalated as Petitioner was walking down the stairs.

6

Petitioner got between Verdejo and "Chuck" and pushed Verdejo back.  She (Navero) then grabbed Verdejo by the arm and pushed her toward the bar.  Petitioner was about two feet behind Navero when she heard gunshots, which came from behind Petitioner. She and Petitioner then ran to the back door.  According to Navero, Petitioner did not have a gun that night, and no one told Verdejo to shoot anyone.

### d.  Gregory Powell

Petitioner testified that he knew Mal Porties and Verdejo through the Rough Riders.   He stated that he was wearing jeans and a white tee shirt on the night of the shooting and that he checked his jacket and was frisked when he passed through security.  He denied owning a vest, and he claimed that his tee shirt did not have any pockets.  He also stated that Porties was not present at the night club on the night of the shooting and that Porties had lied to the jury.

Regarding the shooting, Petitioner stated that, as he was leaving the night club, he heard Verdejo and Scott arguing.  He stepped between them to calm them down and then pushed Verdejo back.  At that point, Rhonda Navero grabbed Verdejo and pushed her toward the back of the night club.  Verdejo did not tell him or anyone else to shoot Scott.  He heard gunshots behind him as he was walking  toward the bar.  There were ten to fifteen people behind him at the time.

Petitioner denied possessing a gun at the night club.  He also denied shooting Scott or having a motive for shooting Scott, and he claimed that he ran out of the night club because he was running from the gunshots.

### e.  Aylaina Verdejo and Robert McGraw

Verdejo testified that, on the night in question, she got into an argument with

7

Scott because Scott previously called her a derogatory name and embarrassed her in front of a number of people.  She denied telling anybody to assault another person and she denied hearing anyone else say,"Shoot him."  She claimed that she fell when Rhonda pushed her and that she did not see the actual shooting.  After the shooting, she waited for the police to arrive and then answered their questions.

Ms. Verdejo claimed that Petitioner did not have a weapon on the night of the shooting and that she did not see him shoot Scott.  She also denied seeing Mal Porties at the night club.  She thought that Porties may have been somewhat jealous of Petitioner because Petitioner became a member of the Rough Riders in ninety days and then became a vice president of the club.  Robert McGraw testified that Verdejo was his niece and that he had never known her to be violent with anyone.

On June 8, 2006, the jury found Petitioner guilty, as charged, of assault with intent to commit murder, Mich. Comp. Laws § 750.83; discharge of a weapon in a building, Mich. Comp. Laws § 750.234b; and felony firearm, Mich. Comp. Laws § 750.227b.  On June 23, 2006, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of twelve to twenty years in prison for the assault conviction and two to four years in prison for the discharge-of-a-weapon conviction.

**B.  The Direct Appeal**

Petitioner appealed his convictions to the Michigan Court of Appeals through his court-appointed attorney, Peter Jon Van Hoek.  The sole issue raised in the appellate

8

brief filed by Mr. Van Hoek on May 14, 2007, was whether Petitioner's convictions should be reversed due to insufficient evidence that he shot the complainant.

On July 18, 2007, Petitioner informed Mr. Van Hoek and the Michigan Court of Appeals by letter that he no longer wished to have Mr. Van Hoek represent him and that he would like Mr. Van Hoek to withdraw from his case.  In the same letter, Petitioner asked the Court of Appeals to give him time to retain a different appellate attorney to prepare an appellate brief on his behalf.  Petitioner's letter was received by the Michigan Court of Appeals and docketed on the Register of Actions.  At this time, the State had not yet filed its appellate brief.[1]

The Michigan Court of Appeals did not address Petitioner's letter seeking to retain different appellate counsel.

In addition, on September 24, 2007, Mr. Van Hoek filed a motion in the trial court to withdraw as counsel.  That motion stated, among other things, that Petitioner was dissatisfied with the appellate brief Mr. Van Hoek had filed on his behalf and that there had been an irreparable breakdown in the attorney-client relationship.  The trial court did not rule on Mr. Van Hoek's motion.

 The case was submitted on September 25, 2007.  On October 30, 2007, the Court of Appeals affirmed Petitioner's convictions in an unpublished opinion, without hearing oral argument.  *See People v. Powell*, No. 272403, 2007 WL 3170150 (Mich. Ct. App. Oct. 30, 2007).

On November 19, 2007, Mr. Van Hoek and retained attorney Timothy M.

------

[1]The State filed its appellate brief on August 30, 2007.

Holloway filed a written stipulation stating that Mr. Holloway was substituting for Mr. Van Hoek as appellate counsel for Petitioner.  Mr. Holloway then filed a motion for reconsideration in the Michigan Court of Appeals.  He argued that:  (1) the Confrontation Clause, the Rules of Evidence, and Petitioner's right to due process were violated by (a) a witness's out-of-court statement identifying Petitioner as the shooter and (b) the prosecutor's argument regarding that statement; (2) trial counsel was ineffective for failing to produce evidence regarding the victim's blood alcohol; (3) the prosecution endorsed a number of witnesses, but failed to produce the witnesses at trial; and (4) trial counsel was ineffective for failing to (a) object to a witness's out-of-court statement and the prosecutor's argument regarding that statement, (b) introduce evidence of the victim's blood alcohol and (c) develop the *res gestae* issue and request appropriate jury instructions.  The Michigan Court of Appeals denied the motion for reconsideration without prejudice to Petitioner's right to  raise the issues in a motion for relief from judgment under Subchapter 6.500 of the Michigan Court Rules.  *See People v. Powell*, No. 272403 (Mich. Ct. App. Dec. 12, 2007, amended Dec. 19, 2007, and December 28, 2007).

In an application for leave to appeal in the Michigan Supreme Court, Petitioner raised the claims that he previously presented to the Michigan Court of Appeals on direct appeal and in his motion for reconsideration.  He also argued that (1) the Court of Appeals should have allowed supplementation of the issues and further briefing when counsel presented new issues in a motion for reconsideration, and (2) the Constitution required substitution of appellate counsel or at least a hearing and response to his requests for substitution of counsel.  On June 25, 2008, the Michigan Supreme Court

10

denied leave to appeal because it was not persuaded to review the issues.  *See People v. Powell*, 481 Mich. 925; 750 N.W.2d 590 (2008).  Supreme Court Justice Marilyn J. Kelly voted to remand the case to the Michigan Court of Appeals for consideration of the issues raised by Petitioner's new attorney in his motion for reconsideration in the Court of Appeals.

## C.  State Collateral Proceedings

On or about July 6, 2009, Petitioner filed a motion for relief from judgment in the state trial court.  He argued in a supporting brief that:  (1) his rights under state and federal law required substitution of appellate counsel and/or a hearing and response to his requests for substitution of counsel; (2) his rights under the Confrontation Clause were violated by the admission of Cynthia Jones' out-of-court statement identifying him as the shooter; (3) trial counsel was ineffective for failing to produce evidence of the victim's blood alcohol; (4) the prosecutor endorsed a number of witnesses that were not produced at trial; (5) trial counsel was ineffective for failing to (a) object to Cynthia Jones' out-of-court statements and the prosecutor's improper closing argument, (b) develop the *res gestae* issue and request jury instructions, and (c) properly develop and proffer evidence of the victim's intoxication; (6) the trial and appellate courts' failure to address his requests for substituted appellate counsel was "cause" for his failure to raise his issues on appeal before the Michigan Court of Appeals issued its decision; and (7) he was deprived of effective assistance of appellate counsel.

The state trial court denied Petitioner's motion in a reasoned opinion citing Michigan Court Rule 6.508(D)(3).  *See* Op. & Order Den. Def.'s Mot. for Relief from J., *People v. Powell*, No. 06-1978-01 (Wayne County Cir. Ct. Jan. 11, 2010).  Petitioner

11

moved for reconsideration, but the trial court denied his motion because it raised no new issues and did not point to a palpable error requiring reconsideration.  *See* Order Den. Def.'s Mot. for Recons., *People v. Powell*, No. 06-1978-01 (Wayne County Cir. Ct. Apr. 22, 2010).

Petitioner appealed the trial court's decision to the Michigan Court of Appeals, which denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Powell*, No. 299764 (Mich. Ct. App. June 7, 2011). On March 5, 2012, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Powell*, 491 Mich. 851; 808 N.W.2d 763 (2012).

Meanwhile, Petitioner filed a second, unrelated motion for relief from judgment in which he argued that the trial court violated his right to a public trial by closing the courtroom to the public during jury selection.  The trial court denied his motion, and there was no appeal from the trial court's decision.

## D.  The Habeas Petition and Answer

On March 12, 2012, Petitioner filed his habeas corpus petition through counsel *See* Pet. for Writ of Habeas Corpus (ECF No. 1).  He argues in a supporting brief filed on June 13, 2012, that:  (1) his right to appellate counsel required substitution of appellate counsel or a response to his requests for substitution of appointed counsel; (2) the Confrontation and Due Process Clauses were violated by the admission of Cynthia Jones' out-of-court statements identifying him as the shooter; (3) trial counsel was ineffective for failing to produce evidence of the victim's blood alcohol; (4) the prosecution endorsed four witnesses that it intended to produce at trial, but never called the witnesses; (5) trial counsel was ineffective for failing to object, preserve issues, and

12

make proper requests for instructions; and (6) appellate counsel provided ineffective assistance by failing to raise all his claims on direct appeal. *See* Pet'r Brief in Support of Pet. for Writ of Habeas Corpus at 16-33 (ECF No. 3). In a supplemental brief filed on February 23, 2015, Petitioner argues that his convictions must be vacated because the prosecution presented insufficient evidence that he shot the complainant. *See* Supplemental Br. in Support of Pet. for Writ of Habeas Corpus (ECF No. 9).

Respondent David Bergh argues through counsel in a response to the petition that Petitioner procedurally defaulted his second, third, fourth, and fifth claims and that the state-court decisions on Petitioner's claims were not contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. *See* Resp't Answer in Opp'n to Pet. for Writ of Habeas Corpus at 48 (ECF No. 8).

## II. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559  U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103.

14

### III.  ANALYSIS

**A.  Sufficiency of the Evidence**

The Court begins its analysis with Petitioner's claim that his convictions for assault with intent to commit murder, discharge of a weapon in a building, and felony firearm must be vacated because the prosecution presented insufficient evidence that he shot the complainant.  Petitioner points out that Scott did not see a gun in Petitioner's or Verdejo's hands and that someone else in the night club could have fired at Scott.  Petitioner also contends that there was no clear motive for the assault and that Scott did not identify the gunfire as coming from Petitioner.  Also, according to Petitioner, Mal Porties' testimony that he felt an object in Petitioner's vest was insufficient to prove that Petitioner possessed or used a handgun.

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits in the appeal of right.  It concluded that there was sufficient evidence for the jury to find beyond a reasonable doubt that Petitioner was armed with a gun and shot Scott.

**1.  Clearly Established Supreme Court Precedent**

"A defendant challenging the sufficiency of the evidence bears a very heavy burden."  *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000) (quotations marks omitted).  The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether,

> after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted) (emphases in original).  "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt."  *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt."  *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319) (emphasis in original).  Second, even if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Id.* (emphases in original).

## 2. Application

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n. 16.  The Michigan Court of Appeals described the elements of the crimes for which Petitioner was convicted as follows:

> The elements of assault with intent to murder are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder."  *People v. Brown*, 267 Mich. App. 141, 147-148; 703

16

> NW2d 230 (2005); MCL 750.83.  The elements of discharge of a weapon
> in a building are: (1) the defendant intentionally discharges a firearm, (2) in
> a facility, (3) the defendant knows or has reason to believe is an occupied
> structure, (4) in reckless disregard for the safety of any individual.  *People
> v. Henry*, 239 Mich. App. 140, 143; 607 N.W.2d 767 (1999).  The elements
> of felony-firearm are: (1) the defendant possessed a firearm, (2) during the
> commission of, or attempt to commit, a felony. *People v. Avant*, 235 Mich.
> App. 499, 505; 597 NW2d 864 (1999); MCL 750.227b.

*Powell*, 2007 WL 3170150, at *1.

Petitioner is not challenging any particular element of these crimes.  Instead, he

claims there was insufficient evidence that he was the shooter.

"The identity of a defendant as the perpetrator of the crimes charged is an

element of the offense and must be proved beyond a reasonable doubt."  *Byrd v.

Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 25 Mich. App.

646; 181 N.W.2d 655, 656 (1970)).  But "[i]f the evidence at trial was sufficient to permit

jurors to find beyond a reasonable doubt that the man seated at the defense table was

the same person referred to in the account of the offense, then there is no reason to

overturn the jury's conviction based on the government's alleged failure to prove

identity."  *United States v. Thomas*, 763 F.3d 689, 694 (7th Cir. 2014).

The Michigan Court of Appeals accurately summarized the evidence at

Petitioner's trial as follows:

> Although there was a search and frisk policy at the bar, testimony
> suggested that Rough Riders, like defendant, occasionally bypassed this
> security checkpoint.  Further, Porties testified that defendant was actually
> armed with a weapon inside the bar on the night of the shooting.  He also
> felt an unidentifiable object in defendant's vest.  Later, Scott argued with
> Aylaina Verdejo and hurt her feelings.  Then, Verdejo told defendant,
> "Shoot him."  Seconds later, Scott was shot.  Scott saw fire from what
> appeared to be a gun.  That fire was five feet away, directly in front of
> defendant.  No one else stood near the fire or between Scott and
> defendant.  Defendant ran out of the back exit of the building after the

17

shooting.

*Powell*, 2007 WL 3170150, at *2.

A rational trier of fact could have concluded from this evidence taken in the light most favorable to the prosecution that Petitioner was the shooter. Petitioner apparently admitted to Mal Porties that he had a gun on him, and Scott claimed that he saw gunfire in front of Petitioner at a time when no one else was nearby. Additionally, Officer Fresh recorded in his report on the incident that a witness had said Petitioner was the shooter.

There was no evidence that anyone else on the premises had a gun, and the prosecutor was not required to remove every reasonable hypothesis except that of guilt. *Vannerson*, 786 at 225. Further, the fact that the defense witnesses contradicted Porties' and Scott's testimony on certain details is not a basis for habeas relief, because

> [a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000).

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

In conclusion, the evidence established that Petitioner possessed a gun, that he assaulted Scott with an intent to kill him by shooting him several times, and that he knowingly discharged a firearm in a building with reckless disregard for the safety of the other people in the building. Sufficient evidence supported the jury's verdict, and the state appellate court's decision on Petitioner's claim deserves deference because it was reasonable. The Court therefore denies relief on Petitioner's sufficiency-of-the-evidence

18

claim.

**B. Substitution of Appellate Counsel**

Petitioner alleges next that his constitutional right to appellate counsel, as well as his rights to due process and equal protection of the law, required the state courts to grant his requests for substitution of appellate counsel on direct appeal.  Petitioner claims that, at a minimum, the trial court or the Michigan Court of Appeals should have responded to his requests for substitution of appointed counsel.

**1. Clearly Established Federal Law**

The Sixth Amendment to the United States Constitution provides the accused in a criminal prosecution "the right to . . . have the Assistance of Counsel for his defense." U.S. CONST. amend. VI.  An element of the right to counsel "is the right of a defendant who does not require appointed counsel to choose who will represent him."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *accord Burton v. Renico,* 391 F.3d 764, 771 (6th Cir. 2004) (stating that "[a]ttendant in the Sixth Amendment right to counsel is the right to secure counsel of one's choice"); *Linton v. Perini*, 656 F.2d 207, 208 (6th Cir. 1981) (stating that "implicit in this guarantee [of the right to assistance of counsel] is the right to be represented by counsel of one's own choice").  The right to counsel of choice applies on appeal.  *See Cottenham v. Jamrog*, 248 F. App'x 625, 635 (6th Cir. 2007) ("A criminal defendant has the constitutional right to counsel of choice on his appeal.").

"[W]ere a defendant not provided the opportunity to select his own counsel at his own expense, substantial risk would arise that the basic trust between counsel and

19

client, which is a cornerstone of the adversary system, would be undercut." *Linton,* 656

F.2d at 209. "An unwanted counsel 'represents' the defendant only through a tenuous

and unacceptable legal fiction. Unless the accused has acquiesced in such

representation, the defense presented is not the defense guaranteed him by the

Constitution, for, in a very real sense, it is not his defense." *Faretta v. California,* 422

U.S. 806, 821 (1975). "Thus, the Sixth Amendment prohibits a court from unreasonably

denying a defendant his counsel of choice." *United States v. Treadway*, 328 F.3d 878,

887 (6th Cir. 2003).

"[T]he right to counsel of choice does not extend to defendants who require

counsel to be appointed for them." *Gonzalez-Lopez,* 548 U.S. at 151. But

> [w]here the right to be assisted by counsel of one's choice is wrongly
> denied . . . , it is unnecessary to conduct an ineffectiveness or prejudice
> inquiry to establish a Sixth Amendment violation. Deprivation of the right
> is "complete" when the defendant is erroneously prevented from being
> represented by the lawyer he wants, regardless of the quality of the
> representation he received.

*Id.* at 148. Thus, "the wrongful deprivation of choice of counsel is 'structural error,'

immune from review for harmlessness . . . ." *Kaley v. United States*, 134 S. Ct. 1090,

1102 (2014); *accord Wilson v. Mintzes*, 761 F.2d 275, 286 (6th Cir. 1985) (stating that

"the right to counsel of choice . . is either respected or denied irrespective of the

harmlessness or prejudicial nature of the error"); *Cottenham,* 248 F. App'x at 634

(stating that "[d]enial of the right to counsel on appeal, including the right to counsel of

choice, is structural error that can never be harmless"). "Different lawyers do all kinds of

things differently. . . . So for defendants like [Petitioner], having the ability to retain the

'counsel [they] believe[ ] to be best' — and who might in fact be superior to any existing

20

alternatives — matters profoundly." *Kaley*, 134 S. Ct. at 1102-03 (quoting *Gonzalez-Lopez*, 548 U.S. at 146).

### 2. Application

The record in this case shows that the state trial court appointed appellate counsel for Petitioner on August 7, 2006.  *See* Register of Actions, *People v. Powell*, No. 06-001978-01-FC (3d Judicial Cir. Ct. of Mich.) (ECF 7-1 at 4).  On May 14, 2007, Mr. Van Hoek of the State Appellate Defender Office filed an appellate brief on Petitioner's behalf, raising just one issue.  *See* Def.-Appellant's Appl. for Leave to Appeal, Mich. Sup. Ct. No. 135730, Ex. F, docket entry 45 (ECF 7-19 at 68).

On July 18, 2007, the Michigan Court of Appeals received and docketed Petitioner's letter asking Mr. Van Hoek to withdraw from the case and asking the Court of Appeals for "time to retain another appeal (sic) attorney and prepare for my appeal & briefs."  *See id.*, docket entry 50; *see also* Petitioner's letter to the Michigan Court of Appeals and attorney Van Hoek, Def.-Appellant's Appl. for Leave to Appeal, Mich. Sup. Ct. No. 135730, Ex. I (ECF No. 7-19 at 75).  At that time, the State had not yet filed its appellate brief.

In addition, on September 24, 2007, Mr. Van Hoek filed a motion in the trial court to withdraw as counsel for Petitioner.  *See* Register of Actions, *People v. Powell,* No. 06-001978-01-FC (3d Judicial Cir. Ct. of Mich.) (ECF No. 7-1 at 4); *see also* Def.-Appellant's Appl. for Leave to Appeal, Mich. Sup. Ct. No. 135730, Ex. G (ECF No. 7-19 at 70-71).[2]  The state trial court did not rule on the motion.

---

[2]  Mr. Van Hoek states in his motion that Petitioner was dissatisfied with Van Hoek's brief, that Petitioner wished to have Van Hoek withdraw as appointed counsel,

On October 30, 2007, the Michigan Court of Appeals issued its dispositive opinion in Petitioner's case, without hearing oral argument and without ever having addressed Petitioner's request for additional time to retain another appellate attorney.

Petitioner retained a new attorney after the Court of Appeals issued its decision, because on November 19, 2007, Petitioner's new appellate attorney (Mr. Holloway) and Petitioner's appointed attorney (Mr. Van Hoek) stipulated to the substitution.  *See* Stipulation for Substitution of Counsel for Appellant Gregory Powell, Mich. Ct. App. No. 272403 (ECF No. 7-18 at 62-63).  Despite Petitioner's delay in acquiring retained counsel,

> [t]he right to choice of counsel is implicated whenever a defendant informs the court that his current counsel is not his counsel of choice or that he is unhappy with his counsel.  *See United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990); *Wilson*, 761 F.2d at 281 n. 10.  Upon receiving such information, a court has an obligation to investigate.  *Iles*, 906 F.2d at 1131.

*Cottenham*, 248 F. App'x at 636.

Here, Petitioner informed the Court of Appeals and Mr. Van Hoek more than three months before the Court of Appeals issued its dispositive decision that he wanted a different appellate attorney.  The letter asked Mr. Van Hoek to withdraw as counsel, and it asked the state "courts to allow [him] time to retain another appeal (sic) attorney and prepare [his] appeal & briefs."  Mem. in Support of the MCR 6.500 *et seq* Mot., Ex. I (ECF No. 7-21, at 89).

 Petitioner's letter clearly indicated that he was dissatisfied with his appointed

---

and that Mr. Van Hoek agreed there had been an irreparable breakdown in the attorney-client relationship.

appellate attorney and that he wished to retain a different appellate attorney to file a brief on his behalf.  Although the letter was not a formal motion for a continuance or for substitution of counsel, it approximated such a motion and clearly communicated that Petitioner was seeking additional time to hire new counsel.  Petitioner's letter put the Court of Appeals on notice that Petitioner was dissatisfied with appointed counsel, that he wished to have appointed counsel removed, and that he wanted to replace appointed counsel with retained counsel, but that he needed more time to retain counsel.  As such, the letter was sufficient to invoke the right to counsel of choice.  *See Wilson*, 761 F.2d at 281 n. 10 (noting that "[a]n accused's right to counsel of choice is implicated in motions for disqualification of counsel, motions for continuance so that counsel of accused's choice might be present, and motions for substitution of counsel") (internal citations omitted); *cf. Iles*, 906 F.2d at 1130 n.8 (stating that balancing the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice must be based on "a motion, or something that approximates such a motion," and pointing out that "Iles never tried to 'fire' his appointed counsel, never moved for a continuance to seek new counsel, and never sought to represent himself").

Although a request for substitution of counsel normally must be presented to the trial court pursuant to Michigan Court Rule 7.208(G),[3] the Michigan Court of Appeals

---

[3] Rule 7.208(G) reads:

> **G.  Matters Pertaining to Appointment of Attorney.**  Throughout the pendency of an appeal involving an indigent person, the trial court retains authority to appoint, remove, or replace an attorney except as the Court of Appeals otherwise orders.

23

also has authority to address an appellant's request for counsel.  *Beatty v. Caruso*, 64 F. App'x 945, 949 (6th Cir. 2003) (citing *People v. Griffin*, 22 Mich. App. 101; 177 N.W.2d 213 (1970) (reversing and remanding for a rehearing and ordering that the defendant be given the assistance of court-appointed counsel on remand)). Furthermore, a defendant is entitled to a reasonable or fair opportunity to acquire counsel of choice.  *Chandler v. Fretag*, 348 U.S. 3, 10 (1954); *Powell v. Alabama*, 287 U.S. 45, 53, (1932).

The Court of Appeals in this case took no action[4] on Petitioner's request for a continuance to retain substitute appellate counsel.

By ignoring Petitioner's request to retain counsel, the Court of Appeals essentially denied Petitioner his right to substitute retained counsel for appointed counsel.  The Court of Appeals violated Petitioner's constitutional right to counsel of choice and deprived him of the right to appeal the issues of his choice.  And because the wrongful deprivation of choice of counsel is a structural error, *Kaley*, 134 S. Ct. at 1102, the Court need not determine whether the constitutional error was harmless.

The Court therefore grants a conditional writ of habeas corpus on Petitioner's first claim.  The State of Michigan shall have ninety days from the date of this opinion to provide Petitioner with a new appeal of right on the issues that he raised through retained counsel in his motion for reconsideration in the Michigan Court of Appeals on direct appeal.

---

[4]In its response, the State notes that the Sixth Circuit has cited three factors to consider when evaluating a court's denial of a request for substitute counsel.  But here, the Michigan Court of Appeals did not deny Petitioner's request for substitute appellate counsel – it ignored it.

## IV.  CONCLUSION

The state appellate court's failure to address and grant Petitioner's request to substitute retained appellate counsel for appointed counsel was contrary to *Gonzalez-Lopez*.  Consequently, the Court grants a conditional writ of habeas corpus on Petitioner's claim that he was denied his right to substitution of appellate counsel.

"Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation . . . ."  *United States v. Morrison*, 449 U.S. 361, 364 (1981),  The Court finds that the appropriate remedy here is a new appeal of right.  Accordingly, within ninety days of the date of this opinion, the State of Michigan shall either release Petitioner or provide Petitioner with a new appeal of right on the issues that he raised through retained counsel in his motion for reconsideration in the Michigan Court of Appeals on direct appeal.

It is further ordered that Petitioner's sufficiency-of-the-evidence claim, which he raised through appointed counsel on direct appeal, is denied because the state court's adjudication of that claim on the merits was objectively reasonable.  The Court declines to issue a certificate of appealability on the sufficiency-of-the-evidence issue because reasonable jurists would not disagree with the Court's resolution of that claim, nor conclude that the issue deserves encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 14, 2015

25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY POWELL,

       Petitioner,

                              CASE NO. 12-cv-11100
v.                                HONORABLE SEAN F. COX

DAVID BERGH,

       Respondent.
_____/

## PROOF OF SERVICE

    I hereby certify that a copy of the foregoing document was served upon counsel

of record on April 14, 2015, by electronic and/or ordinary mail.

                                S/Jennifer McCoy_____
                                Case Manager